## Department of Public Assistance, Appellant, *v.* Reustle et al.

Argued November 26, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Jacob L. Aaron,* Special Deputy Attorney General, with him *David Wachtel, M. Louise Rutherford,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellant.

*Samuel A. Goldberg,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 5, 1948:

Rosie Reustle in August, 1936, applied to the Department of Public Assistance of the Commonwealth of Pennsylvania for old age relief, and from that time until May, 1939, received aid to the extent of $866.70. On June 16, 1939, she signed a document as follows:— "I, Rosie Reustle, 1337 Bleigh St., Philadelphia, do hereby agree to pay to the Department of Public Assistance of the Commonwealth of Pennsylvania, . . . the sum of Eight hundred sixty-six Dollars seventy cents ($866.70). . . . It is agreed that no attempt will be made to realize by the Commonwealth upon this judg-

ment entered until the property 3850 N. Marshall St., Phila., Pa., owned by the undersigned is sold or transferred or until my death." There followed an authorization in the usual form to enter judgment against her for the said amount.

On September 11, 1939, the Department of Public Assistance filed this confession of judgment, and judgment was duly entered thereon.

On November 17, 1908, there had been conveyed to William F. P. Reustle and Rosie C., his wife, and the survivor of them, the premises 3850 N. Marshall Street, Philadelphia. William F. P. Reustle died on June 17, 1927, so that his wife thereupon became the sole owner of the property. On July 10, 1941, she conveyed it, under the name of Rosie C. Reustle, to defendants Orazio DiPaola and Mary DiPaola. She died on March 1, 1942.

On August 18, 1944, plaintiff issued a sci. fa. to revive its judgment, naming the DiPaolas as terre-tenants. They filed an affidavit of defense in which they asserted that they had acquired the property free and clear of the judgment indexed in the name of Rosie Reustle because title to the property stood in the name of Rosie C. Reustle and it had been so conveyed to them. Testimony was taken by the court sitting without a jury and an adjudication was filed in favor of plaintiff but the court en banc reversed that finding and found instead for the terre-tenants.

It may be stated at the outset that there has never been any question but that the Rosie C. Reustle who conveyed her property to the DiPaolas was the same person as the Rosie Reustle against whom the Department of Public Assistance had entered its judgment. But the court below took the position that in the absence of actual knowledge of that fact—and it is admitted they had no such knowledge—the DiPaolas were not bound by the notice furnished by the record of the judgment because of its entry in the name of Rosie Reustle with-

out the middle initial "C" which appeared in the deed. of the property to her and her husband in 1908.

The principles controlling this situation were stated at length in the comparatively recent case of *Coral Gables, Inc. v. Kerl*, 334 Pa. 441, 6 A. 2d 275. Title to real estate was there held in the name of "Caroline C. Kerl" and a judgment was entered against her in that name, but a previous judgment had been filed by another creditor against "Caroline Kerl", who was admittedly the same person. It was held that this judgment was entitled to priority because the testimony revealed that there was no other person by the name of Kerl living in the county, that the Miss Kerl in question was known more or less indiscriminately as "Caroline" or "Caroline C.", that sometimes she wrote her name the one way and sometimes the other, and that in her business transactions she had not been accustomed to use her middle initial. The question was whether, under those circumstances, the omission of that initial in the indexing of the judgment was absolutely fatal so far as its function of affording constructive notice was concerned, or whether the entry was sufficient to safeguard the priority of the lien. This court adopted the latter view, saying (p. 447, A. p. 278) : "It is not necessary that the name of the judgment debtor as docketed and indexed should be letter-perfect, nor do the cases hold that the omission of the middle initial in the entry of a judgment automatically and inevitably vitiates the entry and subordinates it to subsequent judgments more accurately docketed. Each case must depend upon concomitant circumstances. The freedom with which persons use their names in various forms demands a corresponding flexibility in the law if it is to conform to the habits and usages of life rather than be unduly technical. The sole function of a name is to identify the person whom it is intended to designate, and therefore all that is legally necessary in the docketing and indexing of judgments is that the defendant should be individuated with

a degree of accuracy sufficient either to lead a reasonably careful searcher to conclude that he is the person who is the object of the search, or to suggest to the searcher the wisdom of inquiry to ascertain the fact. Where there is enough to put an ordinarily prudent person upon guard, inquiry becomes a duty, and if an investigation, reasonably pursued, would disclose the identity of the judgment debtor, the subsequent lienor is bound by notice of the previous judgment even though inaccurately recorded." The rule thus adopted would seem to be in harmony with that which prevails in other jurisdictions; it protects property rights against the carelessness or wilful blindness of those whose duty it is to search the records. The law is clear that if a person is confronted with circumstances, wholly *outside* the record, which, in the exercise of common prudence, ought to put a reasonable man upon inquiry, he will be charged with notice of the facts that such inquiry, properly pursued, would have disclosed. Surely, it would be altogether inconsistent and illogical if he were not similarly to be put upon inquiry by facts and circumstances reasonably disclosed *by the record itself.*

Here there was no excuse for one searching the judgment indices on behalf of the prospective purchasers of 3850 N. Marshall Street to fail to realize that the judgment of the Department of Public Assistance against Rosie Reustle was a lien upon that property. A reasonably careful inquirer searching an index for records affecting a person of a given name and finding an entry of the correct surname and the correct Christian or baptismal name, would not ordinarily allow the omission of a middle initial to divert his inquiry until he had satisfied himself that such entry did not relate to the person as to whom he was making the search. In the present case, apart from the obvious rarity, not to say uniqueness, of the name "Rosie Reustle" (there were only four "Reustles" in the Philadelphia telephone directory and none of them "Rosie" Reustle), when the

searcher saw, as he was bound to see, the judgment indexed under that name, he necessarily saw also the accompanying notation of the court, term and number under which the judgment had been entered, and all that he would then have been obliged to do was to glance at the judgment note itself which had been filed in that court and under that term and number, an inspection of which would have revealed not only the place of residence of Rosie Reustle, namely, 1337 Bleigh Street, *but that she was the owner of the property 3850 N. Marshall Street which the DiPaolas were purchasing from Rosie C. Reustle,* and therefore that the Rosie C. Reustle with the middle initial and the Rosie Reustle without the middle initial were one and the same person and the individual against whom his searching was directed.

The *Coral Gables* case makes it clear that the question whether the particular form of the judgment debtor's name in the index is such as to put the searcher upon inquiry is one of fact, not of law, and depends upon the attendant circumstances. The earlier cases upon which appellees rely and which are all discussed in the *Coral Gables* opinion, so far from being at variance therewith, are really in accord with that decision, for in each of them the surrounding facts were set forth in order to show why the omission of the middle initial was there misleading or harmful. Appellees seek to distinguish the *Coral Gables* decision because of a statement in the opinion to the effect that different principles are applicable where the controversy is between a mortgagee and a purchaser at sheriff's sale. The reasons which make that differentiation necessary are set forth in *Pennsylvania Company for Insurances on Lives and Granting Annuities v. Halpern,* 273 Pa. 451, 454, 455, 117 A. 197, 198, 199, and *Colonial Trust Co., Trustee, v. Lincoln Drive Apartments Corporation,* 299 Pa. 117, 123, 149 A. 165, 167. They obviously do not apply to purchasers at non-judicial or private sales. In *Crippen*

*v. Bergold*, 258 Pa. 469, 102 A. 139, where the controversy was between a mortgagee and a subsequent grantee, it was held that the latter, who took title under a deed signed by "Herman Bergold", was bound by the record notice of a mortgage on the property indexed in the name of "Herman A. Bergold". The court said (p. 471, A. p. 140) : "When, in examining the mortgage index for mortgages against Herman Bergold, the name of Herman A. Bergold was found, ordinary prudence would at once have required a reference to the mortgage itself, from which it would have appeared that it covered the same interest which was being purchased from Herman Bergold. This fact would at once have put the examiner upon inquiry as to whether Herman A. Bergold and Herman Bergold were not one and the same person, . . . It is always easy to ascertain whether or not a mortgage affects the property under examination, so that the prudent rule in examining a mortgage index is to note everything appearing against the name in question, with or without a middle initial. In the present case the name Herman A. Bergold of course included the name Herman Bergold, and a search against all the Hermans would have disclosed the mortgage executed by Herman A."

Under the findings of fact of the court below it is clear that it was the duty of the searcher of the records in the instant case, upon examining the judgment index, to take note there of the name Rosie Reustle and thereupon to make the slight additional inquiry which would have resulted in his ascertaining from the face of the plaintiff's judgment note itself that the Rosie Reustle who confessed that judgment was the Rosie C. Reustle who was selling the property to the DiPaolas and that therefore the latter could not obtain a title free from the lien of the Department of Public Assistance.

The finding of the court below is reversed, and the record is remanded with direction to enter judgment in favor of plaintiff and against defendants.