636 A.2d 496

**FREDERICK WARD ASSOCIATES, INC.,**

v.

**VENTURE, INC., et al.**

No. 755, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Jan. 31, 1994.

Robert F. Kahoe, Jr., Bel Air, for appellant.

Dwight E. Thomey (Baker, Thomey & Emrey, P.A., on the brief), Elkton, for appellees.

Argued before ALPERT, BLOOM and CATHELL, JJ.

ALPERT, Judge.

Appellant, Frederick Ward Associates, Inc., appeals from a declaratory judgment entered in the Circuit Court for Cecil County (Cole, J.) in favor of appellees, Venture, Inc., and Charles Cupeto. The court ruled that appellant's judgment against a "Chris Walker" did not constitute a lien against land deeded to a "John C. Walker" and subsequently transferred to appellees.

Appellant asks:

Did the court err in ruling that the judgment entered against "Chris Walker" does not constitute a lien against land owned by him, but titled in the name of "John C. Walker"?

We answer this question in the negative and, therefore, affirm.

### Facts and Proceedings

On July 16, 1991, a judgment was entered against "Chris Walker" and in favor of appellant in the Circuit Court for Cecil County. On August 21, 1992, John C. Walker trans-

ferred to the appellees, for valuable consideration, his interest in a sixty acre parcel of land located in Cecil County. The parties stipulate that Chris Walker and John C. Walker are now known to be the same person. The property was subdivided and seven of the lots were subsequently transferred to other buyers. Title searches by five attorneys failed to disclose a lien on the property. After a sixth attorney discovered the judgment against Chris Walker,[1] appellees filed their complaint, requesting that the court declare that the judgment against Chris Walker does not constitute a lien against the property titled to John C. Walker and purchased by appellees and subsequent buyers.

Appellees' complaint stated, *inter alia:* "property title searches did not reveal any judgments against the property holder, John C. Walker"; "the title search and lien and judgment search failed to reveal the judgment"; and "the title [was] examined by five lawyers ... each examination did not disclose the judgment." The answer filed by appellant did not deny that five title searches had been conducted without disclosing the judgment.

During the hearing, appellees offered the testimony of Richard Jackson, an attorney. Mr. Jackson testified that he was experienced in the area of title examination. He stated that in conducting such an examination, he would search the title in the full given name of the property owner. Appellees' attorney, Eugene F. Herman, represented to the court that he had personally searched the title in question and that he had not found the judgment against Chris Walker. Additionally, during the course of the hearing, the court questioned counsel repeatedly regarding the title search conducted in this case:

THE COURT: Was the deed titled in John C. Walker?

MR. HERMAN: Yes, sir.

---

1. The sixth attorney was acquainted with John C. Walker, having represented him at one time, and was apparently aware that he used the name "Chris."

THE COURT: Well, I don't know what index you looked in, but some indexes ... have the last name first; then you check.

MR. HERMAN: Well, this suit was brought as indicated.

THE COURT: I mean, if you would search the title, you go to the last name, then you could check under the last name. But other ones will have other indexes. If they merely have the name Walker, and then, you know, all on one spot, you go down and find John, Chris.

MR. HERMAN: There was no Chris Walker indexed that I found.

THE COURT: All right.

    *  *  *  *  .*  *

THE COURT: You searched under John C.?

MR. HERMAN: Yes, sir.

THE COURT: Searched under John C.[; t]he judgment was in the name of Chris Walker?

MR. HERMAN: Yes, sir.

THE COURT: Do we all agree on that? Is that right?

MR. HERMAN: [Judgment] was in the name of Chris Walker.

THE COURT: Right. That's what I am asking. All right. We all agree on that.

    *  *  *  *  *  *

THE COURT: Did you, in fact, search the title?

MR. HERMAN: Yes, sir.

THE COURT: You didn't find out—you found no· Chris at all.

MR. HERMAN: No Chris at all, Your Honor.

Counsel for appellant made no objection to Mr. Herman's representations regarding the title search that he had conducted.

The court then stated,

The way the facts are really conceded ... John Walker is known as Chris Walker. That's his nickname, but John C.

Walker is his Christian name and proper name; the title to the property was in John C. Walker's name. John C. conveyed property to the plaintiff[s] in this case, who were holders in due course without knowledge of any judgment.

The court ruled that the judgment entered in favor of appellant and against Chris Walker did not constitute a lien on the land owned by John C. Walker and conveyed by him to appellees and subsequent buyers. This appeal followed.

### Discussion

Appellant contends that (1) there was no evidence presented at the hearing to show that the title in question had ever been searched and (2) the court erred by applying the standard applicable to a reasonable title search, in determining whether the judgment should constitute a lien on the property. We disagree.

Initially, we note that appellant's answer did not deny appellees' assertions, contained in the complaint for declaratory judgment, that title searches had been conducted without disclosing the judgment. "Averments in a pleading to which a responsive pleading is required ... are admitted unless denied in the responsive pleading or covered by a general denial." Md.Rule 2–323(e) (1993). Appellees' assertions in the complaint regarding the title searches are, therefore, deemed admitted. Indeed, it was conceded as fact at the hearing that appellees had conducted a title search of the property owned by John C. Walker and that they had acquired this property, for valuable consideration, without knowledge of the judgment filed against the property owner in the name of Chris Walker. The court repeatedly questioned counsel regarding whether a title search had been conducted prior to the conveyance of the property and whether the search had disclosed the judgment. Appellees' counsel, Mr. Herman, responded that he had personally examined the title without finding the judgment. Appellant's counsel did not object or make any other representations to the court. We hold that appellant may not raise for the first time on appeal an argument that appellees failed to introduce evidence show-

ing that title to the property had been properly searched. Rule 8–131(a).

Appellant correctly asserts that, pursuant to Maryland Rule 2–621(a), "a money judgment that is recorded and indexed in the county of entry constitutes a lien from the date of entry in the amount of the judgment and post-judgment interest on the defendant's interest in land located in that county." *See* Md.Ann.Code (1989 Repl.Vol.), § 11–402(b), Cts. & Jud.Proc. Article. In this case, however, we must interpret the statutory provisions by which liens attach to real property in the context of the well-settled principle that one who purchases real property without notice of prior equities is protected as a bona fide purchaser for value. *See, e.g., Lewis v. Rippons,* 282 Md. 155, 161–62, 383 A.2d 676, 680–81 (1978). In determining whether a purchaser had notice of any prior equities,

> the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697, 699 (1950).

The judgment against John C. Walker was not indexed under his proper, given name, but rather under the nickname of Chris Walker. Appellant produced no evidence that appellees should have known, at the time the property was conveyed, that John C. Walker and Chris Walker were the same person. While we have found no Maryland cases that present the precise factual scenario of this case, appellees have cited cases from other jurisdictions in support of their position. *See Jones v. Parker,* 107 N.J.Super. 235, 258 A.2d 26 (App.Div. 1969); *Venetsky v. West Essex Bldg. Supply Co.,* 28 N.J.Super. 178, 100 A.2d 291 (App.Div.1953); *Russeck v. Shapiro,* 170 Pa.Super. 89, 84 A.2d 514 (1951). In each case, it was held that a judgment indexed under a nickname or incorrect first name of the judgment debtor did not constitute a lien against

property titled in the correct full name of the judgment debtor and conveyed to a bona fide purchaser for value without notice. The language used by the Superior Court of Pennsylvania in *Russeck* is particularly instructive:

> The sole function of a name is to identify the person whom it is intended to designate, and therefore all that is legally necessary in the docketing and indexing of judgments is that the defendant should be individuated with a degree of accuracy sufficient either to lead a reasonably careful searcher to conclude that he is the person who is the object of the search, or to suggest to the searcher the wisdom of inquiry to ascertain the fact. Where there is enough to put an ordinarily prudent person upon guard, inquiry becomes a duty.

*Id.* 170 Pa.Super. at 92, 84 A.2d at 515 (quoting *Coral Gables, Inc. v. Kerl*, 334 Pa. 441, 447, 6 A.2d 275, 278 (1939)). Appellant cites *Messinger v. Eckenrode*, 162 Md. 63, 158 A. 357 (1932), in support of its position. In *Messinger*, the court determined that the holder of a second judgment entered in the names "J. Edward Heagy and Mary Edith Heagy" was not entitled to priority over the holder of a prior judgment that specified only the middle names and surname of the judgment debtors, "Edward Heagy and Edith Heagy." *Id.* at 69–70, 158 A. at 359. *Messinger* is distinguishable from the case before us because in that case there was no evidence that the judgment records had ever been searched and, additionally, the second judgment holder conceded that she knew the judgment debtors by the names used in the first judgment. *Id.*

We hold that where a judgment is indexed in a nickname or misnomer that is sufficiently dissimilar to the name in which the judgment debtor's property is titled, the judgment will not be enforceable as a lien against the property with respect to a subsequent bona fide purchaser for value without notice of the judgment. Notice will be found, however, where the facts and circumstances are such as would lead a reasonably careful title searcher to conclude either that the name of the judgment debtor and the name of the property owner

designate the same person or that further inquiry is required to ascertain this fact. *See, e.g., Russeck,* 170 Pa.Super. at 92, 84 A.2d at 515.

In the case before us, the court made a factual determination that the judgment against Chris Walker was not properly indexed so as to provide notice to subsequent bona fide purchasers of property titled to John C. Walker. We cannot conclude that this determination was clearly erroneous. Rule 8–131(c). Thus, the court correctly determined that appellees were bona fide purchasers of the property without notice of the prior judgment and, therefore, the judgment did not constitute a lien against the property.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.